IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY LURZ, ERROL WINTERHALTER, RAYNOR DANIELS, DENNIS MAHAFFERY, ANTWONE STEWARD, MARC BURKETT, HOWARD MCGEE, and NATHAN MCNEAL, | ) ) ) ) ) | |
| Plaintiffs, | ) | No. 04 C 6307 |
| v. | ) ) | |
| TOM MONAHAN,[1] SHAN JUMPER, MICHAEL BEDNARZ, CAROL ADAMS, LORI RICKMAN-STONE, and ANDERSON FREEMAN, in their official capacities, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In their Second Amended Complaint ("SAC"), Plaintiffs allege that Defendants violated their Fourteenth Amendment Right to Substantive Due Process in violation of 42 U.S.C. § 1983. Plaintiffs also bring a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies Defendants' motion.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the factual sufficiency. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001); *see also Cler v. Illinois Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005) (motion to dismiss challenges complaint's sufficiency). The Court will only grant a

---

[1] Tom Monahan is currently the Facility Director of the Illinois Department of Human Services Detention Facility in Joliet, Illinois, and thus the Court substitutes Monahan as a Defendant in this matter. *See* Fed. R. Civ. P. 25(d)(1).

motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957)). The Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Centers*, 398 F.3d at 333.

## BACKGROUND

### I.   Factual Background

Plaintiffs Timothy Lurz, Error Winterhalter, Raynor Daniels, Darius Mahaffery, Antwone Steward, Marc Burkett, Howard McGee, and Nathan McNeal have been involuntarily civilly committed at the Treatment and Detention Facility in Joliet, Illinois ("TDF") pursuant to the Illinois Sexually Violent Persons Commitment Act (the "SVP Act"), 725 ILCS 207/1 *et seq.* (R. 35-1; SAC at ¶¶ 1, 4-11.) Plaintiffs have been diagnosed as mentally disabled with a low IQ and have consented to participate in any and all mental health treatment programs provided by the Illinois Department of Human Services ("DHS"). (*Id*. at ¶¶ 4-11, 23.) At or near the completion of Plaintiffs' confinement portion of their sentence, the State filed petitions to have each Plaintiff civilly committed pursuant to the SVP Act. (*Id*. at ¶ 20.) In the SAC, Plaintiffs allege that Defendants, who are employees of DHS and/or TDF, are violating their due process rights by denying them adequate mental health care treatment that gives them a realistic opportunity for their conditions to materially improve. (*Id*. at ¶¶ 28-32.) In addition, Plaintiffs allege that Defendants are violating the ADA by not modifying the present mental health treatment plans to meet Plaintiffs' needs. (*Id*. at ¶¶ 38-41.)

2

Plaintiffs premise their due process claim on Defendants' alleged failure to: (1) provide Plaintiffs with sex offender treatment providers who are properly trained in the treatment of mentally disabled individuals; (2) differentiate between the needs of mentally disabled residents and other residents not diagnosed as mentally disabled, and tailor the programs to meet the needs of both; and (3) provide individualized treatment programs designed for mentally disabled individuals. (*Id*. at ¶ 28a-c.) Plaintiffs allege that Defendants have failed to provide constitutionally adequate treatment because their present treatment substantially departs from accepted professional judgment, practice, or standards. (*Id*. at ¶ 29.)

## II.     Prior Lawsuit

Based on Judge Leinenweber's Memorandum Opinion, and Order in *Hargett v. Adams*, No. 02 C 1456, 2005 WL 399300 (N.D. Ill. Jan. 14, 2005), Defendants contend that Plaintiffs' claims are barred by the doctrine of res judicata. The Court takes judicial notice of the prior judicial proceedings in *Hargett*, including all matters of public record related to the *Hargett* proceedings. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (court may take judicial notice of matters of public record without converting motion to dismiss into motion for summary judgment); *see also Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) (courts may take judicial notice of "proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue"); Fed. R. Evid. 201(b).

In *Hargett*, plaintiffs Jeffrey Hargett, Kim Overlin, Jimmie Smith, and Loren Walker – who is purportedly developmentally disabled – brought a class action complaint alleging violations of the Due Process Clause of the Fourteenth Amendment against the Director of the

3

Illinois Department of Human Services and various officials at TDF. (02 C 1456, R. 1-1; Class Action Compl. at ¶¶ 1-12.) The *Hargett* plaintiffs alleged that their due process rights were violated based on the defendants' failure to: (1) properly train staff regarding the treatment of sexual deviance; (2) provide a coherent and meaningful individualized treatment program for each detainee with understandable goals and a roadmap for improvement and release; (3) make adequate provisions for detainees' family members to participate in rehabilitation efforts; (4) draft and implement fair and reasonable grievance procedures and behavior management plans; (5) afford reasonable opportunities to all residents for educational, religious, vocational, and recreational activities; (6) cease requiring, as a precondition to participate in all but the most basic treatment, that detainees admit to real and imagined crimes for which they were not convicted, thereby placing detainees in jeopardy of future criminal prosecutions; and (7) institute a procedure to guarantee appropriate therapist – patient confidentiality. (*Id*. at ¶ 24a-g.) Based on these factors, the *Hargett* plaintiffs alleged that defendants failed to provide constitutionally adequate treatment because their treatment was a substantial departure from accepted professional judgment, practice, or standards. (*Id*. at ¶ 25.)

After conducting a bench trial, Judge Leinenweber first considered the defendants' assertion that many of the plaintiffs' arguments were moot because defendants had already changed some of the challenged policies – policies that are not at issue in the present matter. *See Hargett*, 2005 WL 399300, at \*15. Judge Leinenweber then examined the plaintiffs' claims of inadequate treatment, concluding that TDF's treatment program and delivery of services adequately met constitutional requirements and that the treatment program had a coherent overall plan with identifiable goals and standards. *Id*. at \*\*18-20. Judge Leinenweber also concluded

4

that the plaintiffs did not establish with sufficient evidence that the individualized treatment programs were constitutionally inadequate. *Hargett*, 2005 WL 399300, at **13, 20. Specifically, Judge Leinenweber concluded: "The treatment plan for the patients is sufficiently individualized to meet patient needs, and, as noted above, the treatment program provides a coherent road map and goals for treatment progress." *Id.* at *13.

## ANALYSIS

### I. Sufficiency of the Pleadings

#### A. Due Process Claim

Plaintiffs assert a due process claim under the Fourteenth Amendment. Defendants do not challenge the legal sufficiency of Plaintiffs' claim, and do not assert that Plaintiffs have failed to meet the liberal federal notice pleading standards, which require them to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Instead, Defendants "seek dismissal of certain paragraphs of the Complaint." (R. 59-1; Defs.' Reply at 10.) Specifically, Defendants move the Court to "dismiss" paragraphs 25, 27 and 28 from the SAC pursuant to Rule 12(b)(6). Rule 12(b)(6), however, only tests the legal sufficiency of a complaint. *See Szabo*, 249 F.3d at 675-76. Defendants' request is more properly characterized as a motion to strike, which is governed by Federal Rule of Civil Procedure 12(f). Pursuant to Rule 12(f), the Court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Because Defendants do not demonstrate that striking paragraphs 25, 27 and 28 is warranted under Rule 12(f), the Court denies their request to strike.

#### B. ADA Claim

5

Plaintiffs also bring a claim under the ADA. Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." *Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir. 2004) (quoting 42 U.S.C. § 12132). "State prisons fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (quoting 42 U.S.C. § 12131(1)(B)). To state a claim under the ADA, Plaintiffs must allege that they are qualified individuals with disabilities and that they were denied benefits or discriminated against because of their disability. *See Radaszewski*, 383 F.3d at 607.

In the SAC, Plaintiffs incorporate their allegations underpinning their due process claim, in addition to alleging that DHS is a public entity and Plaintiffs are qualified individuals with disabilities. (R. 35-1; SAC at ¶¶ 33-34.) Further, Plaintiffs allege that they have been "excluded from fully participating in the mental health treatment provided by Defendants, and have been denied the benefit of meaningful, individualized mental health treatment sufficient to provide a reasonable opportunity for release." (*Id*. at ¶ 36.) These allegations are sufficient to plead an ADA claim. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S .Ct. 992, 152 L.Ed.2d 1 (2002) (Rule 8(a)(2) provides that a complaint must include only a short and plain statement showing plaintiff is entitled to relief).

Defendants, nonetheless, argue that the Court must dismiss any claim for money damages under Title II of the ADA against the individual Defendants because the only proper defendant under Title II is a public entity. *See Walker v. Snyder*, 213 F.3d 344, 347 (7th Cir. 2000). In

*Walker*, the Seventh Circuit held that "only a state, and not state officials, may be sued for violations of the ADA and that the state is immune from suit by virtue of the Eleventh Amendment." *Bruggeman v. Blagojevich*, 324 F.3d 906, 908 (7th Cir. 2003) (citing *Walker*, 213 F.3d at 347). The Supreme Court, however, has "explicitly recognized the right of a private plaintiff to assert an ADA claim for injunctive relief against a state official in federal court." *Radaszewski*, 383 F.3d at 606 (citing *Board of Tr. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 n.9, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001)).

In any event, Plaintiffs are suing the individual Defendants in their official capacities and "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45, 58 (1989). Further, since the Seventh Circuit's decision in *Walker*, the Supreme Court has held that Title II of the ADA does not abrogate the Eleventh Amendment and authorizes private citizens to bring actions for money damages against public entities. *Tennessee v. Lane*, 541 U.S. 509, 517, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004). Accordingly, Plaintiffs may bring an ADA claim against the individual Defendants in their official capacities.

## II.     Res Judicata

Defendants argue that the Court must dismiss the SAC based on the doctrine of res judicata. The preclusive effect of a judgment rendered by a federal court depends on federal, not state law. *In re Bridgestone Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 767 (7th Cir. 2003). Under federal law, a party must meet three requirements to establish res judicata: "'(1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits.'" *Highway J. Citizens Group v. United States Dep't of Transp.*, No. 05-

2667, __ F.3d __, 2006 WL 2136639, at *5 (7th Cir. Aug. 2, 2006) (quoting *Central States, Se & Sw Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 628 (7th Cir. 2002)).

Because Plaintiffs do not deny that they were members of the *Hargett* certified class and Defendants in both actions were or are employees of either DHS or TDF sued in their official capacities, the parties do not dispute the first res judicata element. *See Licari v. City of Chicago*, 298 F.3d 664, 667 (7th Cir. 2002) (governmental agency and its officers are in privity for purposes of res judicata). Moreover, the parties do not dispute that Judge Leinenweber's decision in *Hargett* was a final judgment on the merits. Therefore, the Court turns to the second res judicata element – identity of the causes of action.

"Two claims are one for the purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Tartt v. Northwest Cmty. Hosp.*, 453 F.3d 817 (7th Cir. 2006) (citation omitted); *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338-39 (7th Cir. 1995) ("A claim has 'identity' with a previously litigated matter if it emerges from the same 'core of operative facts' as that earlier action."). In other words, "[u]nder the federal common law of res judicata, a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment." *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999).

In the class action context, "a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874, 104 S.Ct. 2794, 2798, 81 L.Ed.2d 718 (1984) (citations omitted). Specifically, "[a] judgment in favor of either side is conclusive in a subsequent action between them on any issue actually litigated and determined, if its determination was essential to that judgment." *Id.*; *see also Cameron v. Tomes*, 990 F.2d 14, 17 (1st Cir. 1993); *Elliott v. ITT Corp.*,

8

150 B.R. 36, 41 (N.D. Ill. 1992); *Harrison v. Southeastern Pa. Transp. Auth.*, No. 90-2729, 1990 WL 124909, at *1 (E.D. Pa. Aug. 23, 1990).

In *Cooper*, the Supreme Court held that a judgement in a prior class action, which determined that the defendant did not engage in a pattern or practice of discrimination, was not dispositive of the individual claims of discrimination asserted in a subsequent action. *Cooper*, 467 U.S. at 878-80, 104 S.Ct. at 2800-2802; *see also Brewton v. City of Harvey*, 285 F. Supp. 2d 1121, 1124-25 (N.D. Ill. 2003) (finding that res judicata did not bar the plaintiff's individual claims of discrimination where no pattern or practice of discrimination was found in prior suit). In so holding, the Supreme Court explained that "[t]he class-action device was intended to establish a procedure for the adjudication of common questions of law or fact. If the [defendant's] theory were adopted, it would be tantamount to requiring that every member of the class be permitted to intervene to litigate the merits of his individual claim." *Cooper*, 467 U.S. at 880, 104 S.Ct. at 2802; *see also Akootchook v. United States*, 271 F.3d 1160 (9th Cir. 2001) ("If all class members had to bring their own individual claims in addition to the common class claims, it would destroy the efficiency of having class actions and reduce the benefit of joining such a suit."). In *Cameron*, the First Circuit followed the reasoning of *Cooper*. The plaintiff in *Cameron* challenged the constitutionality of the conditions at the Massachusetts Treatment Center for the Sexually Dangerous, and claimed that he required special accommodations due to a physical disability and a mental condition. 990 F.2 at 17-18. The First Circuit held that a prior class action did not bar the plaintiff's claims under the doctrine of res judicata because the class action concerned the general conditions at the treatment center and there was no indication that the "issues peculiar to [the plaintiff] were actually litigated" in the prior class action. *Id*. at 18.

To determine whether the issues raised in this case were "actually litigated and

9

determined" in *Hargett*, and "essential" to the judgment in *Hargett*, the Court compares the complaints filed in both cases, and reviews Judge Leinenweber's opinions in the *Hargett* case. *See*, *e.g.*, *Nevada v. United States*, 463 U.S. 110, 130-34, 103 S.Ct. 2906, 2918-2920, 77 L.Ed.2d 509 (1983); *Highway J Citizens Group*, 2006 WL 2136639, at *5-6. In this case, Plaintiffs assert claims regarding the treatment of involuntarily civilly committed individuals who have low IQs and are mentally disabled. Specifically, Plaintiffs allege that Defendants denied them adequate mental health care treatment services because: (1) the sex offender treatment providers were not "properly trained in the treatment of mentally disabled individuals;" (2) Defendants failed to "differentiate between the needs of mentally disabled residents and other residents not diagnosed as mentally disabled, and to tailor the programs in order to meet the needs of both;" and (3) Defendants did not "provide individualized treatment programs designed for mentally disabled individuals." (R. 35-1; SAC at ¶ 28.) Plaintiffs further allege that "[d]ue to their disabilities, [they] have been excluded from fully participating in the mental health treatment provided by Defendants, and have been denied the benefit of meaningful, individualized mental health treatment sufficient to provide a reasonable opportunity for release." (*Id*. at ¶ 36.) Additionally, Plaintiffs allege that Defendants "knew that Plaintiffs had been diagnosed as mentally disabled with low IQs, and knew that Plaintiffs could not benefit from the mental health treatment provided at TDF," and nevertheless "failed to modify the mental health treatment plans or to supplement them." (*Id*. at ¶¶ 37, 38.)

In contrast, the *Hargett* suit raised general claims regarding the constitutionality of the treatment program at TDF. The *Hargett* plaintiffs "challenge[d] under the Due Process Clause of the Fourteenth Amendment the punitive conditions and the inadequate treatment received by the Plaintiffs and all others similarly situated. Specifically, [the *Hargett*] action challenge[d] the

decision of the Defendants to warehouse and put out of sight the Plaintiffs and all others similarly situated in an attempt to hold them indefinitely and to punish, rather than treat their perceived mental disabilities." (02 C 1456, R. 1-1; Compl. at ¶ 15.) Indeed, "[t]he predominate common question [in *Hargett* was] whether the mental health treatment and care provided by the Defendants . . . comports with the requirements of the Due Process Clause of the United States Constitution." (*Id*. at ¶ 18.) Further, Judge Leinenweber emphasized that "[t]he [*Hargett*] complaint attacks the program [at TDF] in its entirety." *Hargett v. Baker*, No. 02 C 1456, 2002 WL 1433729, at *2 (N.D. Ill. July 1, 2002).

Defendants argue "that the same issues that form the basis of Plaintiffs' claims in this case were litigated and adjudicated in *Hargett*." (R. 59-1; Defs.' Reply at 5.) Specifically, Defendants contend that "Judge Leinenweber found that the treatment programs at the TDF were sufficiently individualized so as to satisfy the applicable constitutional standards, and in doing so rejected Loren Walker's claim that he was not receiving constitutionally adequate mental health treatment that was sufficiently individualized to his mental disability." (*Id*.) (emphasis in original omitted.) Judge Leinenweber, however, did not make that specific finding.

As an initial matter, although Walker, one of the named plaintiffs in *Hargett*, was purportedly developmentally disabled, the record does not reflect that he specifically represented mentally disabled class members. Indeed, in certifying the class in *Hargett*, Judge Leinenweber explained that the named plaintiffs satisfied the typicality requirement because "while all subjected individually to varying treatment, [the named plaintiffs] are united in their allegation that they all receive constitutionally inadequate treatment flowing from the same systematic deficiencies in Defendants' program." *Hargett*, 2002 WL 1433729, at *4. He further found that the plaintiffs satisfied the commonality requirement because despite "the factual variations

11

among the individual SVP's mental health needs . . . the Plaintiffs' attack on the SVP treatment program is premised on a broad allegation that the Defendants engaged in standardized conduct toward the members of the proposed class." *Id*. at *3.

Furthermore, Defendants do not show that claims regarding the treatment of mentally disabled individuals with low IQs were "actually litigated" in *Hargett*. Defendants rely on trial and deposition testimony that the parties presented to Judge Leinenweber during the *Hargett* bench trial. In particular, Defendants point to the trial testimony of Dr. Shan Jumper in his capacity as the Associate Clinical Director at TDF; the deposition and trial testimony of Dr. Raymond Wood, the Clinical Director at TDF; and the trial testimony of Defendants' expert witness Dr. Anita Schlank, among others.[2] Defendants rely on this testimony for the proposition that as part of each detainee's initial assessment, the doctors administered intelligence and achievement tests to determine whether the patients had any special needs for their treatment. Based on these results, the doctors then determined whether to place patients into several "Core" groups, including two special Core 4 treatment programs designed to address the needs of developmentally disabled patients. (*See* R. 57-7; Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. F, Jumper Test., at 1319; Ex F., Wood Test., at 194.) Plaintiffs argue that the Court cannot take judicial notice of these facts because they do not meet the standards of Federal Rule of Evidence 201(b).

Even if the Court could take notice of these facts pursuant to Rule 201(b), they would not establish that the claims Plaintiffs currently assert were "actually litigated and determined" in

---

[2] Defendants also refer to the deposition testimony of Plaintiffs' expert Dr. Fred Berlin, although there is no indication from the record, including the deposition designations, that the parties submitted this evidence at trial. (*See* 02 C 1456, R. 147-1; Deposition Designations.)

*Hargett*. First, Judge Leinenweber did not indicate whether he relied upon such evidence in reaching his findings. Second, he made no specific findings regarding the treatment of mentally disabled individuals with low IQs. Third, Judge Leinenweber's conclusion that "[t]he treatment plan for the patients is sufficiently individualized to meet patient needs, and . . . provides a coherent road map and goals for treatment progress," *Hargett*, 2005 WL 399300, at *13, relates to the plaintiff class generally and does not constitute a specific finding regarding the treatment of mentally disabled individuals. Fourth, the testimony itself does not establish that mentally disabled individuals with low IQs received adequate treatment because the Court cannot take judicial notice of the testimony for the truth of the matters asserted therein. *See*, *e.g.*, *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 n.6 (7th Cir. 1997) ("courts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed"); *International Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (internal quotations omitted)).

Accordingly, the record before the Court reveals that *Hargett* resolved only general claims concerning the treatment program at TDF, and Plaintiffs' specific claims regarding the treatment of mentally disabled individuals with low IQs were not "actually litigated" in *Hargett*, nor was a determination of these specific claims "essential" to the judgment in that case. Therefore, under *Cooper*, res judicata does not bar Plaintiffs' claims in this case.

## III.    Stare Decisis

Finally, Defendants' argument that the Court is barred from reviewing Plaintiffs' claims

based on the principle of stare decisis also fails. The Supreme Court has defined stare decisis as

> the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. That doctrine permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact.

*Vasquez v. Hillery*, 474 U.S. 254, 265, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986). Simply put, stare decisis requires decisions to be made in accordance "with previous authoritative decisions in similar cases emanating from one's own circuit and from the Supreme Court." *Shore v. O'Leary*, 833 F.2d 663, 667 (7th Cir. 1987). Because Judge Leinenweber's decision is not controlling precedent over the Court, Defendants' argument based on stare decisis is misplaced. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002) ("The reasoning of district judges is of course entitled to respect, but the decision of a district judge cannot be a controlling precedent.").

## **CONCLUSION**

For the foregoing reasons, the Court denies Defendants' Motion to Dismiss pursuant to Rule 12(b)(6).

Dated: August 11, 2006

                        **ENTERED**

                        _____
                        **AMY J. ST. EVE**
                        **United States District Court Judge**